IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GISELLE BRADLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 05-0930-C-W-SOW |
| | ) | |
| SANFORD BROWN COLLEGE, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

COME NOW Plaintiffs, by and through counsel, and for their Amended Complaint against Defendants, allege and state as follows:

### FACTS COMMON TO ALL COUNTS

1.      Plaintiff Giselle Bradley is an individual who resides at 620 N. 31st Street, Kansas City, MO 66102.

2.      Plaintiff Catherine Clutter is an individual who resides at 809 3rd Street, Belton, MO 64012.

3.      Plaintiff Chris Howell is an individual who resides at 8017 NE 111th Terrace, Kansas City, MO 64157.

4.      Plaintiff Brian Kinman is an individual who resides at 5244 Ralston, Raytown, MO 64113.

5.      Plaintiff Kim Murphy is an individual who resides at 5806 Monrovia, Shawnee, Kansas 66216.

6.      Plaintiff Darla Roberts is an individual who resides at 11408 Bristol

Terrace, Kansas City, MO 64134.

7.    Plaintiff Denise Robertson is an individual who resides at 201 West 8th Terrace, Apt. 26, Lawson, MO 64062.

8.    Plaintiff Chanell Townsend is an individual who resides at 5606 Olive, Kansas City, MO 64130.

9.    Defendant Sanford Brown College, Inc. ("SBC") is a Delaware corporation in good standing in the State of Missouri, currently conducting business at 520 East 19th Avenue, North Kansas City, MO 64116.

10.    Defendant Colorado Technical University, Inc. ("CTU") is a Colorado corporation in good standing in the State of Missouri, currently conducting business at 520 East 19th Avenue, Kansas City, MO 64116.

11.    Defendant Whitman Education Group, Inc. is a Florida corporation, and was the parent company and owner and operator of SBC and CTU in 2002 and 2003.

12.    Defendant Career Education Corporation ("CEC") is a Delaware corporation that merged with Whitman Education Group, Inc. in 2003. It currently owns and operates SBC and CTU. Its corporate headquarters are located at 2895 Greenspoint Parkway, Suite 600, Hoffman Estates, IL 60195. It is traded on the NASDAQ National Market under the symbol CECO.

13.    Defendant Marlin Acquisition Corp., on information and belief, currently conducts business in the State of Missouri, and owns and operates Sanford Brown College.

14.    Defendant CTU Corporation, on information and belief, currently

conducts business in the State of Missouri, and owns and operates Colorado Technical University.

15.     Defendants' business is  the operation and ownership of proprietary, for profit, technical institutions.

## COUNT I
## FRAUDULENT MISREPRESENTATION

16.     Beginning in 2001 and continuing on various dates thereafter as reflected in the Enrollment Agreements, advertisements, promotional materials, course materials and other documents, Defendants, through its representatives and agents acting within the scope and course of their agency and employment and on behalf of Defendants, intentionally engaged in a pattern and practice of making certain fraudulent misrepresentations to the Plaintiffs, and others, regarding the programs at SBC, as more particularly described below.

A.     <u>Giselle Bradley</u>

(1)     On or about May 10, 2002, Bradley submitted her SBC Enrollment Application.  Prior to submitting this application, she met with representatives of Defendants, including but not limited to Admissions Representative Anthony Pryor, Financial Aid Advisor Diane Schafer, and other personnel in the Admissions Office and Financial Aid Office.

(2)     Beginning on or about May 10, 2002 and continuing thereafter, Pryor, Schafer and other representatives of Defendants made the following representations to Bradley about the school and curriculum upon which Bradley relied:

a.   Tuition would be a set or fixed amount;

b.   She would receive large financial grants and loans;

c.   Graduates of the Radiography Program could reasonably anticipate a starting salary of $50,000 and a sign on bonus of up to $4,000, which she could apply to her student loans;

d.   She would be provided adequate modern training aids and equipment upon which to learn;

e.   She would be placed in a safe, educational environment for clinical study that was in close proximity to her home;

f.   There were a limited number of seats in the Radiography Program that were filling up quickly, the program would not exceed 30-35 students, and she needed to sign up as soon as possible or would be left out;

g.   Previous Radiography Program graduates had a high passing rate on the state radiography exam;

h.   She needed to purchase certain new books to master the information needed to pass the classes, and;

i.   She needed to purchase scrubs and equipment from the school.


B.   <u>Catherine Clutter</u>

(1)   On or about February 8, 2002, Catherine Clutter submitted her SBC Enrollment Application.  Prior to submitting this application, she

met with representatives of Defendants, including but not limited to Admissions Representative Linda Hamilton, Financial Aid Advisor Kathy Bailey, and other personnel in the Admissions Office and Financial Aid Office.

(2)    Beginning on or about February 8, 2002 and continuing thereafter, Hamilton, Bailey, and other representatives of Defendants made the following representations to Clutter about the school and curriculum upon which Bailey relied:

 a.    Tuition would be a set and/or fixed amount;

b.    Based upon historical results at the school, the program curriculum would adequately prepare her to pass the state board exam for radiography without further course instruction;

c.    She would receive a "degree";

d.    She would receive large financial grants and loans;

e.    Graduates of the Radiography Program could reasonably anticipate a starting salary of $50,000 per annum, and even a sign on bonus of at least $10,000, which could be applied toward her loans;

f.    There was a shortage of x-ray technicians in the Kansas City Metropolitan area;

g.    There were a limited number of seats in the Radiography Program that were filling up quickly, the program would not

5

exceed 30-35 students, and she needed to sign up as soon as possible or would be left out;

h.  Previous Radiography Program graduates had a high passing rate, in the 90th percentile, on the state radiography exam;

C.  <u>Chris Howell</u>

(1)  On or about March 13, 2002, Chris Howell submitted his SBC Enrollment Application. Prior to submitting this application, he met with representatives of Defendants, including but not limited to Admissions Representatives Maddy Koehler and Heather Dickman, Financial Aid Advisor K. Bailey, and other personnel in the Admissions Office and Financial Aid Office.

(2)  Beginning on or about March 13, 2002 and continuing thereafter, Koehler, Dickman, Bailey, and other representatives of Defendants made the following representations to Howell about the school and curriculum upon which Howell relied:

a.  The instructors were experienced and well-qualified;

b.  Tuition would be a set and/or fixed amount;

c.  Based upon historical results at the school, the program curriculum would adequately prepare him to pass the state board exam for radiography without further course instruction;

d.  He would receive a "degree";

e.  Large financial grants and loans were easy to get;

f.  Graduates of the Radiography Program could reasonably anticipate a starting salary of $45,000-50,000 per annum, or an actual hourly wage of $20-25 an hour, and even a sign on bonus;

g.  SBC Credits hours were transferable to other colleges and universities, the same as if they were attending any major college;

h.  He would be provided state of the art training aids and equipment upon which to learn;

i.  There were a limited number of seats in the Radiography Program that were filling up quickly, the program would not exceed 30-35 students, and he needed to sign up as soon as possible or would be left out;

j.  Previous Radiography Program graduates had a high passing rate, in the 90th percentile, on the state radiography exam;

k.  He needed to purchase certain new books to master the information needed to pass the classes, and;

l.  He needed to purchase scrubs and equipment from the school.

D.  Brian Kinman

(1)  On or about January 10, 2002, Brian Kinman submitted his SBC Enrollment Application.  Prior to submitting this application, he met with representatives of Defendants, including but not limited to Admissions Representative Anthony Pryor, Financial Aid Advisor Karina (last name unknown), and other personnel in the Admissions Office and Financial Aid Office.

(2)  Beginning on or about January 10, 2002 and continuing thereafter, Pryor, Kinman, and other representatives of Defendants made the following representations to Kinman about the school and curriculum upon which Kinman relied:

a.  The instructors were experienced and well-qualified;

b.  Based upon historical results at the school, the program curriculum would adequately prepare him to pass the state board exam for radiography without further course instruction;

c.  He would receive a "degree";

d.  Graduates of the Radiography Program could reasonably anticipate a  sign on bonus of $15,000 to $20,000, which would help him pay off his student loans;

e.  SBC Credits hours were transferable to other colleges and universities;

8

f.   He would be placed in a safe, educational environment for clinical study that was in close proximity to his home;

g.   There were a limited number of seats in the Radiography Program that were filling up quickly, the program would not exceed 30-35 students, and he needed to sign up as soon as possible or would be left out;

h.   Previous Radiography Program graduates had a high passing rate, in the 90th percentile, on the state radiography exam;

i.   He needed to purchase certain new books to master the information needed to pass the classes, and;

j.   He needed to purchase scrubs and equipment from the school.

E.   <u>Kim Murphy</u>

(1)   On or around April 25, 2002, Murphy submitted her SBC Enrollment Application.  Prior to submitting this application, she met with representatives of Defendants, including but not limited to Admissions Representative Leah Lehman, Financial Aid Advisor Diane Schaefer, and other personnel in the Admissions Office and Financial Aid Office.

(2)   Beginning on or about April 25, 2002 and continuing thereafter, Lehman, Schaefer and other representatives of Defendants

made the following representations to Murphy about the school and curriculum upon which Murphy relied:

   a.   The instructors were experienced and well-qualified;

   b.   Tuition would be a set and/or fixed amount;

   c.   Based upon historical results at the school, the program curriculum would adequately prepare her to pass the state board exam for radiography without further course instruction;

   d.   She would receive a "degree";

   e.   Graduates of the Radiography Program could reasonably anticipate a starting salary of $50,000 per annum, or an actual hourly wage of $20-25 an hour, and even a sign on bonus of $5,000 to $10,000;

   e.   SBC Credits hours were transferable to other colleges and universities, the same as if they were attending Harvard;

   f.   She would be provided state of the art training aids and equipment upon which to learn;

   g.   She would be placed in a safe, educational environment for clinical study that was in close proximity to her home;

   h.   There were a limited number of seats in the Radiography Program that were filling up quickly, the program would not exceed 30-35 students, and she needed to sign up as soon as possible or would be left out;

10

i.      Previous Radiography Program graduates had a high passing rate, in the 90th percentile, on the state radiography exam;

j.      She needed to purchase certain new books to master the information needed to pass the classes;

k.      She needed to purchase scrubs and equipment from the school; and

l.      There was a shortage of x-ray technicians in the Kansas City Metropolitan area.


F.      <u>Darla Roberts</u>

(1)     On February 12, 2002, Roberts submitted her Enrollment Application to SBC.  Prior to submitting this application, she met with representatives of Defendants in person and over the telephone, including but not limited to Admissions Representative Maddy Koehler, Financial Aid Advisor Karina (last name unknown), and other personnel in the Admissions Office and Financial Aid Office.

(2)     Beginning in or around January, 2002, and continuing thereafter, Koehler, Karina, Judy Wilhite, and other representatives of Defendants made the following representations to Roberts about the school and curriculum upon which Roberts relied:

a.      The instructors were experienced and well-qualified;

b.      Tuition would be a set and/or fixed amount;

c.      Based upon historical results at the school, the program curriculum would adequately prepare her to pass the state board exam for radiography without further course instruction;

d.      She would receive a "degree";

e.      She would receive large financial grants and loans;

f.      Graduates of the Radiography Program could reasonably anticipate a starting hourly wage of $20-25 an hour, and even a sign on bonus;

g.      SBC Credits hours were transferable to other colleges and universities;

h.      She would be provided adequate modern training aids and equipment upon which to learn;

i.      She would be placed in a safe, educational environment for clinical study that was in close proximity to her home;

j.      Prior to her enrollment, Maddy Koehler called Roberts repeatedly at home and at work and stated there were a limited number of seats in the Radiography Program that were filling up quickly, the program would not exceed 30-35 students, and she needed to sign up as soon as possible or she would not make the next class;

k.      Previous Radiography Program graduates had a high passing rate, in the 90th percentile, on the state radiography exam;

l.      She needed to purchase certain books to master the information needed to pass the classes, and;

m.      She needed to purchase scrubs and equipment from the school.


G.      <u>Denise Robertson</u>

(1)      On or around February 19, 2002, Robertson submitted her SBC Enrollment Application.  Prior to submitting this application, she met with representatives of Defendants, including but not limited to Admissions Representative Leah Lehman, and other personnel in the Admissions Office and Financial Aid Office.

(2)      Beginning on or about February 19, 2002 and continuing thereafter, Lehman, Judy Wilhite  and other representatives of Defendants made the following representations to Robertson about the school and curriculum upon which Robertson relied:

a.      The instructors were experienced and well-qualified;

b.      Tuition would be a set and/or fixed amount;

c.      Based upon historical results at the school, the program curriculum would adequately prepare her to pass the state

board exam for radiography without further course instruction;

d.　Graduates of the Radiography Program could reasonably anticipate a starting salary of $50,000 per annum, or an actual hourly wage of $20-25 an hour, and even a sign on bonus of up to $4,000;

e.　SBC Credits hours were transferable to other colleges and universities, the same as if they were attending Harvard or Stanford;

f.　She would be provided adequate modern training aids and equipment upon which to learn;

g.　There were a limited number of seats in the Radiography Program that were filling up quickly, the program would not exceed 30-35 students, and she needed to sign up as soon as possible or would be left out;

h.　Previous Radiography Program graduates had a high passing rate, in the 90th percentile, on the state radiography exam;

i.　She needed to purchase certain books to master the information needed to pass the classes, and;

j.　She needed to purchase scrubs and equipment from the school.

H.    Chanell Townsend

(1)    On or around February 12, 2002, Townsend submitted her SBC Enrollment Application.  Prior to submitting this application, she met with representatives of Defendants, including but not limited to Admissions Representative Maddy Koehler, Financial Aid Advisor Karina (last name unknown), and other personnel in the Admissions Office and Financial Aid Office.

(2)    Beginning on or about February 12, 2002 and continuing thereafter, Koehler, Karina, Judy Wilhite, and other representatives of Defendants made the following representations to Townsend  about the school and curriculum upon which Townsend relied:

    a.    The instructors were experienced and well-qualified;

    b.    Tuition would be a set and/or fixed amount;

    c.    Based upon historical results at the school, the program curriculum would adequately prepare her to pass the state board exam for radiography without further course instruction;

    d.    She would receive a "degree";

    e.    She would receive large financial grants and loans;

    f.    Graduates of the Radiography Program could reasonably anticipate a starting hourly wage of approximately $20 an hour, and even a sign on bonus of up to $5,000;

15

g.    SBC Credits hours were transferable to other colleges and universities, the same as if they were attending any major university;

h.    She would be provided adequate modern training aids and equipment upon which to learn;

i.    She would be placed in a safe, educational environment for clinical study that was in close proximity to her home;

j.    In early 2002, Koehler was repeatedly calling Townsend at home and at work and stating that there were a limited number of seats in the Radiography Program that were filling up quickly, the program would not exceed 30-35 students, and she needed to sign up as soon as possible or would be left out;

k.    Previous Radiography Program graduates had a high passing rate, in the 90th percentile, on the state radiography exam;

l.    She needed to purchase certain books to master the information needed to pass the classes, and;

m.    She needed to purchase scrubs and equipment from the school.

17.    In addition to the foregoing affirmative misrepresentations, Defendants also fraudulently omitted or concealed certain facts from all of the Plaintiffs. Defendants had a duty to disclose these facts due to their superior

16

knowledge that was not within the fair and reasonable reach of the Plaintiffs. The facts fraudulently concealed or omitted from all of the Plaintiffs named herein included, but were not limited to, the following:

a.     Some SBC instructors were hired with no previous experience;

b.     Classes would commence with or without an instructor;

c.     Class instructors could change during the semester;

d.     Instructors were not required to prepare or submit lesson plans;

e.     Some instructors were hired just a week before classes began and had little time to prepare;

f.     SBC engaged in a pattern and practice of creating false expense estimates and false class credits in their applications for Pell Grants and to support applications for student loans;

g.     The curriculum of the Radiography Program would not prepare Plaintiffs for the state board exam for radiology;

h.     Admissions representatives were given sales quotas with respect to new student enrollment. These quotas were monitored by sales managers, and the admission representatives were subjected to pressure, criticism and ridicule if the predetermined quotas were not satisfied. These quotas were created based upon figures determined

by financial forecasts and budget calculations which had no relationship to the education of the students, but were purely profit driven;

i. No empirical or statistical data based on SBC graduates existed to support Defendants' representations with regard to starting salaries, bonuses or pass rates for the state board exam.

18.    The foregoing representations made by Defendants through its agents and representatives were false.    On information and belief, the aforementioned admissions representatives, financial aid representatives and other personnel were acting on behalf of, and serving the business interests of, all Defendants named herein in making said false representations.

19.    Defendants knew the foregoing representations were false, or Defendants did not know whether the representations were true or false but represented that they were true, and Defendants intended that Plaintiffs rely upon said representations and omissions and thus enroll in SBC.

20.    The fraudulent misrepresentations and omissions made by Defendants were material to the decision of the Plaintiffs to enroll in SBC.  But for the pattern and practice by  Defendants of making false, fraudulent and misleading statements and omissions to prospective students, Plaintiffs and others would not have enrolled in this institution.

21.    Plaintiffs relied on all of the aforesaid misrepresentations and omissions in enrolling in SBC, and in so relying were using ordinary care.

22.     As a direct result of such fraudulent misrepresentations and omissions, Plaintiffs were thereby damaged.

23.     Plaintiffs were induced by Defendants' intentional, willful, and malicious misrepresentations and omissions to apply for student loans, purchase books, supplies, equipment, and to enroll in SBC and pay tuition.   Plaintiffs used their own funds and/or student loans to pursue SBC's curriculum in radiography, and  suffered additional loss of income they would have reasonably earned had they not been fraudulently induced into enrolling at SBC.  Plaintiffs will continue to suffer lost income in the future.

24.     Defendants' conduct was outrageous, and showed complete indifference to or conscious disregard for the rights of Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount that will serve to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiffs pray actual damages against Defendants in an amount that is fair and reasonable, including all monies expended by Plaintiffs for tuition, fees, books, supplies, equipment and any further incidental charges and fees together with such sums Plaintiffs might reasonably have earned during the time devoted to Defendants' radiography curriculum, for punitive damages in an amount sufficient to punish Defendants and to deter Defendants and others from like conduct, and for such further relief the Court deems just and proper.

## COUNT II
## VIOLATION OF THE MERCHANDISING PRACTICES ACT

25.     Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

19

26.     Plaintiffs purchased services primarily for personal purposes, and thereby suffered an ascertainable loss of money as the result of the use and employment by Defendants of methods, acts and practices declared unlawful pursuant to Revised Missouri Statutes, Section 407.020 et seq.

27.     All of the foregoing misrepresentations, omissions and concealments by Defendants were relied upon by Plaintiffs in deciding to enroll in Defendants' institution, and in expending monies for tuition, books, and incidental fees, and in devoting their time to Defendants' curriculum, which, had Plaintiffs known the truth, would have been devoted to the pursuit of employment, or pursuing a legitimate education at another college or university.

28.     Plaintiffs have been damaged by Defendants' actions in the amounts expended by Plaintiffs for tuition, books, incidental fees, loss of earnings and loss of educational opportunity, and Section 407.025 R.S.Mo., gives Plaintiffs the right to recover actual damages sustained by the actions of Defendants in violations of Section 407.010 R.S.Mo.  Said section further entitles Plaintiffs to recover punitive damages, reasonable attorney fees, costs, treble damages and such other equitable action and relief as the Court deems necessary and proper.

29.     Defendants' actions were outrageous, and showed complete indifference to or conscious disregard for the rights of Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount that will serve to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiffs pray actual damages against defendants in an amount that is fair and reasonable, including all monies expended by plaintiffs for tuition, books, supplies, equipment and all further incidental charges and fees together with such sums Plaintiffs might reasonably have earned during the time devoted to Defendants' radiography curriculum, for punitive damages in amount sufficient punish Defendants and to deter like conduct in the future, for costs and attorneys' fees, and for any further relief the Court deems just and proper.

**COUNT III**
**BREACH OF CONTRACT**

30.     Plaintiffs incorporate by reference the foregoing statements and allegations set out in Counts I and II as though fully set forth herein.

31.     Defendants entered into written Enrollment Agreements with each Plaintiff in which they agreed to provide the vocational training and placement services detailed in the advertisements, catalogs, promotional brochures and literature, in consideration of the tuition payments of each student.  True and correct copies of the Enrollment Agreements are attached hereto as Exhibits A, B,  C, D, E, F and G, and are incorporated herein by reference.

32.     Defendants failed to provide Plaintiffs with adequate materials and instruction, and failed to provide the Radiography Program they represented, and in doing so breached their obligations under the agreements with Plaintiffs.

33.     The agents, employees, and directors of Defendants induced these students to enter into said Enrollment Agreements through misleading and fraudulent statements and misrepresentations or omissions made to prospective

students, which representations or omissions constitute additional breaches of Defendants' contracts with these students.

34. As a direct and foreseeable consequence of Defendants' breach of contract, Plaintiffs have been damaged.

35. At this time, Plaintiffs assert this claim only against Sanford Brown College and Whitman Education Group, Inc., per the Court's November 17, 2005 Order, but reserve the right to assert this claim against Colorado Technical University, Inc. and Career Education Corp. based on information revealed through the course of discovery.

WHEREFORE, Plaintiffs pray actual damages against Defendants in an amount that is fair and reasonable, including all monies expended by Plaintiffs for tuition, books, equipment and all further incidental charges and fees together with such sums Plaintiffs might reasonably have earned during the time devoted to Defendants' court reporting curriculum, for punitive damages in amount sufficient punish Defendants and to deter like conduct in the future, for costs and attorneys' fees, and for any further relief the Court deems just and proper.

Respectfully submitted,

WHITE, ALLINDER, GRAHAM & BUCKLEY, L.L.C.


BY:_____/s/ Gene P. Graham, Jr._____
        GENE P. GRAHAM, JR., Bar No. 34950
        19049 East Valley View Parkway
        Independence, Missouri 64055
        Telephone:   (816) 373-9080
        Telecopy:    (816) 373-9319
        ggraham@wagblaw.com

JOHN KLAMANN, Bar. No. 10190
DIRK L. HUBBARD, Bar. No. 15130
KLAMANN & HUBBARD, P.A
7101 College Blvd., Suite 120
Overland Park, Kansas 66210
Telephone:   (913) 327-7600
Telecopier:   (913) 327-7800

MATTHEW V. BARTLE, Bar No. 40903
DAVID L. MARCUS, Bar No. 47846
BARTLE & MARCUS LLC
1100 Main Street, Suite 2600
Kansas City, Missouri  64105
Telephone:   (913) 271-7822
Telecopy:    (816) 222-0534

ATTORNEYS FOR PLAINTIFFS


<u>REQUEST FOR JURY TRIAL</u>

COME  NOW  Plaintiffs,  by  and  through  the  undersigned,  and  hereby

request a trial by jury on all issues in the above-referenced Petition.


WHITE,  ALLINDER,  GRAHAM  &  BUCKLEY,
L.L.C.


BY:____/s/ Gene P. Graham, Jr._____
GENE  P.  GRAHAM,  JR.          34950
19049 East Valley View Parkway
Independence, Missouri 64055
(816) 373-9080 Fax: (816) 373-9319
ggraham@wagblaw.com

ATTORNEY FOR PLAINTIFF

JOHN KLAMANN, Bar. No. 10190
DIRK L. HUBBARD, Bar. No. 15130
KLAMANN & HUBBARD, P.A
7101 College Blvd., Suite 120
Overland Park, Kansas 66210
Telephone:   (913) 327-7600
Telecopier:   (913) 327-7800

MATTHEW V. BARTLE, Bar No. 40903
DAVID L. MARCUS, Bar No. 47846
BARTLE & MARCUS LLC
1100 Main Street, Suite 2600
Kansas City, Missouri  64105
Telephone:   (913) 271-7822
Telecopy:     (816) 222-0534

ATTORNEYS FOR PLAINTIFFS

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed via ECF this 13th day of July, which sent notification  to:

Ms. Kathryn Goldsmith Lee
HUSCH & EPPENBERGER, LLC
1200 Main Street, Suite 2300
Kansas City, Missouri 64105
ATTORNEY FOR DEFENDANT

Ms. Paula Friedman
DLA PIPER RUDNICK GRAY CARY US LLP
203 North LaSalle Street, Ste., 1900
Chicago, Illinois 60601-1293
ATTORNEY FOR DEFENDANT

 /s/ Gene P. Graham, Jr._____